IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DELINA FLOWERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-492-M |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for supplemental security income (SSI) and disability insurance benefits (DIB) under the Social Security Act. United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **REVERSED** and **REMANDED** for further administrative findings.

I.     **PROCEDURAL BACKGROUND**

Plaintiff's applications for supplemental security income and disability insurance benefits were denied initially and on reconsideration. Following a hearing, an

Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-23). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 15, 2010, the alleged disability onset date. (TR. 12). At step two, the ALJ determined that Plaintiff had severe impairments of: discogenic and degenerative back disorders, spinal sciatica, arthritis, and affective mood disorder. (TR. 12). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 12-13).

At step four, the ALJ found that Plaintiff could not perform her past relevant work. (TR. 21). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could sit for 4 hours a day and stand 2 hours a day and she could walk 2 hours a day, in an 8-hour workday and she could occasionally lift/carry 20 pounds.

(TR. 14).

Based on the finding that Plaintiff could not perform her past relevant work, the ALJ proceeded to step five. (TR. 21). There, he presented the limitations from the RFC

2

in a hypothetical question to a vocational expert (VE) to determine if there were other jobs Plaintiff could perform. (TR. 53). Given the limitations, the VE testified that Plaintiff could perform two light/unskilled jobs and two sedentary/unskilled jobs. (TR. 53-55). The ALJ adopted the testimony of the VE and concluded that Ms. Flowers was not disabled based on her ability to perform the identified jobs. (TR. 22).

## III.  ISSUES PRESENTED

On appeal, Plaintiff alleges errors in: (1) the evaluation of a treating physician's opinion, (2) the credibility analysis, and (3) the RFC assessment. The ALJ erred in his consideration of a treating physician's opinion and in evaluating Plaintiff's credibility. The remaining allegation need not be addressed, as it will likely be affected on remand.

## IV.  ERROR IN THE CONSIDERATION OF DR. SAIDI'S OPINION

On June 24, 2013, treating Physician, Dr. Johnaqa Saidi, authored two Medical Source Statements which outlined Ms. Flowers' abilities to perform various physical and mental work-related activities. (Physical MSS and Mental MSS). TR. 578-582. As alleged by Plaintiff, the ALJ erred in the consideration of Dr. Saidi's Physical MSS. (ECF No. 11:7-11).

### A.  ALJ's Duty in Evaluating a Treating Physician's Opinion

An ALJ must follow a two-pronged analysis in evaluating a treating physician's opinion. First, the ALJ must determine whether a treating physician's opinion is entitled to "controlling weight." *Krausner v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). This analysis, in turn, consists of two phases. First, an ALJ must consider whether the opinion

3

is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at 2 (July 2, 1996) (SSR 96-2p) (internal quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* If the opinion is deficient in either of these respects, it is not entitled to controlling weight. *Id.* At this stage, the ALJ must first determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

If the ALJ declines to give the treating physician's opinion controlling weight, the ALJ must examine particular factors and explain the amount of weight assigned. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner, at* 1330, 20 C.F.R §§ 404.1527. Although the ALJ need not explicitly discuss each factor,

the reasons stated must be "sufficiently specific" to permit meaningful appellate review. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 96-2p, at 5.

If the ALJ rejects the opinion completely, he must give "specific, legitimate reasons" for doing so. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted). An ALJ may reject a physician's opinion outright only on the basis of contradictory medical evidence and not due to his own credibility judgment, speculation, or lay opinion. McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).

### B. Dr. Saidi's Opinions

In the Physical MSS, Dr. Saidi stated that Ms. Flowers suffered from a decreased range of motion with pain in her lumbar spine and hips and that her paraspinal muscles were tender to palpation. (TR. 578, 581, 583). As a result, Dr. Saidi opined that Plaintiff could only occasionally lift and carry up to 20 pounds, and that during an eight-hour workday, Plaintiff could only: (1) sit for three hours, (2) stand for two hours, and (3) walk for one hour. (TR. 578-579). In the Mental MSS, Dr. Saidi stated that Ms. Flowers had a "marked" restriction in her ability to: (1) interact with the public, co-workers, and supervisor and (2) respond appropriately to usual work situations and changes in routine work setting. (TR. 585).

### C. ALJ's Analysis of Dr. Saidi's Opinions

The ALJ acknowledged the Dr. Saidi's opinions and accorded them "limited probative value," with the following explanation:

> The Administrative Law Judge finds that Dr. Saidi's physical medical source statement is not consistent and is inconsistent with the medical

documentation as a whole as other treating doctors did not place any limitations on her ability to perform basic work activities and basically gave her normal back examinations. (Exhibits 5F, 11F, and 12F). Dr. Saidi's mental medical source statement is likewise of limited probative value, as a mental examination is out of his expertise and this assessment was also not supported by any other medical documentation in the file.

(TR. 20-21).

### D. Error in the Consideration of Dr. Saidi's Physical MSS

As stated, an ALJ must conduct a two-step analysis when evaluating the opinion of a treating source. First, the ALJ must determine whether the opinion is entitled to controlling weight. If the answer is no, then the ALJ must assess several factors to determine what "lesser" weight to give the opinion. As alleged by Ms. Flowers, the ALJ erred at step one.

Phase one of the "controlling weight" analysis requires the ALJ to determine whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96–2p, at 2. (internal quotations omitted). Here, the ALJ made no finding in this regard, despite evidence of two MRIs and an EMG which supported Dr. Saidi's opinions.

In July 2009, an MRI of Ms. Flowers' lumbar spine revealed:

- Disc bulge with subligamentous annular tear and bilateral lateral recess stenosis and spinal stenosis at L4-5, and

- Left paracentral disc protrusion with right lateral recess stenosis on the left and moderate lateral recess stenosis on the right without spinal stenosis.

(TR. 486). And an MRI in March of 2003 revealed: "Discogenic and spondylitic changes at L4-5 and L5-S1 contribute to mild bilateral neural foraminal stenosis at each level. (TR. 560). Finally, an EMG study in September 2009 showed: "an abnormal study with electrodiagnostic evidence of chronic left multi-level lumbosacaral radiculopathies." (TR. 561). Based on these findings, the ALJ should have concluded that Dr. Saidi's opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques." Lack of this finding, however, is not fatal to the ALJ's decision, as he was entitled to decline controlling weight at phase two of the analysis if the opinion was not consistent with other substantial evidence in the record.

It was at this phase that the ALJ erred when he declined controlling weight, stating that Dr. Saidi's opinion, as expressed in his Physical MSS, "[wa]s not consistent and [wa]s inconsistent with the medical documentation as a whole as other treating doctors did not place any limitations on her ability to perform basic work activities and basically gave her normal back examinations." (TR. 20). In support of his conclusion, the ALJ generally cited three exhibits. (TR. 20). But the ALJ failed to: (1) provide specific references within the exhibits' 79 pages to support his conclusions or (2) otherwise explain or identify the alleged inconsistencies. Additionally, the ALJ was not entitled to rely on a lack of limitations from other doctors as a basis to support his conclusion.

In *Langley v. Barnhart*, 373 F.3d 1116 (10th Cir. 2004), the Tenth Circuit Court of Appeals rejected a similar "boilerplate" explanation. In *Langley*, a treating

7

psychiatrist had rendered opinions in a mental medical source statement. *Langley*, at 1121. The ALJ rejected the report, stating that the opinion was not consistent with the doctor's own records or other evidence of record. *Id.* at 1122. The Tenth Circuit noted that "The ALJ provided a facially valid reason for not giving Dr. Williams' opinion controlling weight: that it was not consistent with other substantial evidence in the record." *Id.* Even so, the Court reviewed the record and noted that there were "no obvious inconsistencies" between the MSS opinion and the doctor's treatment notes or other evidence of record. *Id.* Ultimately, the Court reversed, stating:

> Because the ALJ failed to explain or identify what the claimed inconsistencies were between [the treating psychiatrist's] opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not "sufficiently specific" to enable this court to meaningfully review his findings. Without further clarification, the reason given by the ALJ does not appear to have been supported by the record.

*Id.* at 1123 (internal citation omitted).

*Langley v. Barnhart* is controlling for two reasons. First, the ALJ failed to specifically identify or otherwise explain how Dr. Saidi's opinion "[wa]s not consistent and [wa]s inconsistent with the medical documentation as a whole[.]" (TR. 20). Second, the record belies the ALJ's statement—with regard to Dr. Saidi's own treatment notes and opinions from other physicians.

Records from Dr. Saidi which document treatment of Ms. Flowers for nearly five years indicate that Dr. Saidi consistently diagnosed Plaintiff with "chronic lumbalgia" and degenerative disc disease, noted paraspinal tenderness upon palpation, and prescribed pain medications and referrals for pain management. (TR. 513-515, 518-

8

519, 521-522, 524, 527-531, 535, 537-540). And contrary to the ALJ's statement that "Exhibits 5F, 11F, and 12F," undercut Dr. Saidi's opinions, the evidence in the exhibits actually supports the Physical MSS. *See* TR. 413 (Exhibit 5F—MRI dated July 16, 2009—*see supra*); TR. 421-426, 466-467 (Exhibits 5F & 11F—notes from Dr. C. Allen Moore documenting diagnoses of spinal stenosis, degenerative disc disease, chronic pain, sciatica); TR. 489, 494, 499 (Exhibit 12F—opinion from Dr. Phillip Jones noting tenderness on palpation over the lumbar spine, sacroiliac joints, sacral area, and thoracic and lumbar paraspinal muscles).

Because the ALJ failed to explain or identify the claimed inconsistencies between Dr. Saidi's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not "sufficiently specific" to enable this court to meaningfully review his findings. Furthermore, the alleged inconsistencies in the exhibits noted by the ALJ are not supported by the record. Finally, the ALJ was not entitled to rely on the fact that other physicians had not placed similar limitations on Ms. Flowers as a basis for rejecting Dr. Saidi's opinions. *See Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) (noting the ALJ improperly relied on the "*absence of contraindication* in the medical records" because "[t]he absence of evidence is not evidence.") (emphasis in original); *see also Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir. 1998) (ALJ cannot meet Secretary's burden by saying that information is absent). Due to these errors, remand is warranted.

### E. No Error in the Consideration of Dr. Saidi's Mental MSS

Dr. Saidi also completed a Mental MSS, wherein he stated that Ms. Flowers had a "marked" ability to: (1) interact with the public, co-workers, and supervisors and (2) respond appropriately to usual work situations and changes in routine work setting. (TR. 585). The ALJ gave the opinion "limited probative value," reasoning that it was outside Dr. Saidi's field of expertise. (TR. 20-21). Plaintiff contends that the ALJ improperly rejected the Mental MSS, arguing: "His opinion was entitled to great weight regarding her pain level and the inter-related depression. The ALJ offered no legitimate rationale as to why his opinion regarding pain and depression should be rejected." (ECF No. 11:11).

The Court should reject Plaintiff's argument for two reasons. First, the Mental MSS is silent as to any opinion regarding Ms. Flowers' pain or depression. (TR. 584-586). When asked to identify any factors which supported the opinion regarding Ms. Flowers' "marked" abilities, none are listed. Second, Ms. Flowers does not argue that the ALJ should have afforded the Mental MSS "controlling weight." Instead, she limits her argument to a challenge regarding the legitimacy of the ALJ's reason for rejecting the opinion. But the ALJ was entitled to reject the opinion on the basis that Dr. Saidi had never treated Ms. Flowers for mental health impairments and the opinion exceeded the physician's field of expertise. *See* 20 C.F.R §§ 404.1527, 416.927 (whether the physician is a specialist in the area upon which an opinion is rendered is one of the factors the ALJ must examine when determining what lesser weight to accord a treating

physician's opinion); see also Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (noting that the ALJ need not explicitly discuss each factor).

## V.     ERROR IN THE CREDIBILITY/PAIN ANALYSIS

Plaintiff alleges that the ALJ erred in evaluating her complaints of pain and related credibility. (ECF No. 11:12-13). According to Ms. Flowers, the ALJ addressed her pain complaints and credibility in a boilerplate manner without linking his conclusions to actual evidence. Ms. Flowers is correct.

### A.     ALJ's Duty to Evaluate Allegations of Pain/Credibility

Social Security regulations require a two-step process to evaluate a claimant's allegations of pain. First, the adjudicator must consider whether there is an underlying medically determinable impairment that could reasonably be expected to produce the individuals' pain. Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at 2 (July 2, 1996) (SSR 96-7p). Second, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to perform basic work activities. Id. In doing so, the ALJ must make a finding on the claimant's credibility based on a consideration of the entire case record, including the individual's own statements about the symptoms. Id. When evaluating the credibility of a claimant's allegations, the ALJ must consider factors including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at 3.

It is not enough for the ALJ to simply recite the factors, although he need not undergo a formalistic factor-by-factor recitation of the evidence. SSR 96-7p at 4; *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). However, in considering the factors, the ALJ must "set[ ] forth the specific evidence he relie[d] on in evaluating the claimant's credibility." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). The ALJ must give specific reasons for the credibility finding, and must be sufficiently specific regarding the weight given to the individual's statements and the reasons for that weight. SSR 96-7p at 4. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." *Id.*

### B. Plaintiff's Allegations of Pain

At the hearing, Plaintiff testified she suffered from back pain which caused anxiety, prevented her from participating in family activities, required her to have help taking a shower, and rendered her unable to perform household chores. (TR. 46, 47, 49). Ms. Flowers testified that she had treated the pain with surgery, pain pills, and steroid injections. (TR. 38-44). With regard to these treatments, she testified that:

- the surgery had not helped her pain, and she was reluctant to undergo a second surgery,

- the cortisone injections were ineffective in treating the pain, and

- although the medications made the pain bearable, they caused side effects including tiredness, an inability to concentrate, and memory loss.

(TR. at 41, 42, 49). At the hearing, Plaintiff addressed an allegation that a Dr. Henthorn had fired her as a pain management client because she had sought pain medications from other providers while under his care. (TR. 42). Plaintiff explained that Dr. Henthorn had been pushing her into having surgery, which she did not want to do, so she sought treatment with another pain management doctor who also prescribed pain medication. (TR. 42-43). Plaintiff denied any allegations of drug-seeking behavior and the ALJ stated that he did not see any additional suggestions in the record that she had engaged in such behavior. (TR. 43).

With respect to specific limitations, Plaintiff testified that she:

- had difficulty walking and had to lie down to recover and elevate her feet to relieve muscle spasms in her back,

13

- could sit for approximately one hour, and
- could occasionally lift 20 pounds

(TR. 45).

### C. Error in the Credibility Evaluation

At step two, the ALJ determined that Ms. Flowers suffered from severe impairments involving discogenic and degenerative back disorders, spinal sciatica, and arthritis. (TR. 12). In evaluating Plaintiff's credibility, the ALJ concluded that these severe impairments could reasonably be expected to cause her alleged symptoms of pain. (TR. 16). As a result, the ALJ had a duty to evaluate whether he believed Ms. Flowers' statements regarding her pain and related limitations. *See* SSR 96-7p.

The ALJ recognized the criteria for evaluating Ms. Flowers' pain, summarized her testimony, and stated: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (TR. 16). Following this statement, the decision outlined a nearly four-page recitation of Ms. Flowers' medical treatment, including diagnoses, treatment, and findings on examination. (TR. 16-19). The summary contained evidence which substantiated Ms. Flowers' allegations of pain. *See, e.g.* TR. 16 (diagnosis of lumbar degeneration, displacement of lumbar intervertebral disc, MRI showing L4-5 disc bulges and subligamentous annular tear and bilateral lateral stenosis, diagnosis of sciatica, referral to neurologist and pain management physician); TR. 17 (diagnosis of degenerative disc disease, sciatica, and chronic pain); TR. 18 (tenderness of lumbar

14

spine, sacroiliac joints, thoracic and lumbar paraspinal muscles upon palpation, positive bilateral straight leg testing, diagnosis of chronic back pain, x-rays showing severe disc space narrowing and spurring at L5-S1, and degenerative changes as L4-5 and L5-S1); TR. 19 (MRI findings showing discogenic and spondylitic changes at L4-5 and L5-S1 contributing to mild bilateral neural foraminal stenosis).

Following the summary, the ALJ stated: "The undersigned has considered the claimant's complaints as directed by SSR 96-7p, but finds that the allegation of significant limitations in the ability to perform basic work activities is not credible to the extent alleged." (TR. at 19). The ALJ then recited more findings from medical professionals, and then stated:

> The claimant has not always been consistent with treatment and medications and has documentation of having severe impairment, but exaggerates her pain intensity to obtain Lortab, Percocet, and Roxicodone all of which are pain medications, and she may be drug-seeking still. The claimant has not always been complaint, has not been consistent with follow up recommendations, and has not ceased smoking as recommended numerous times by numerous physicians.

(TR. 20).

This statement is insufficient to discount Ms. Flowers' credibility for several reasons. Although the ALJ was not required to make a formalistic factor-by factor evaluation of the evidence in relation to Ms. Flowers' allegations, he was required to consider the regulatory factors and link his findings to specific evidence of record. SSR 96-7p, at 2-4. The ALJ failed to comply with this directive.

In discounting Ms. Flowers' allegations, the ALJ failed to mention Plaintiff's treatment for pain, including various side effects of medications, how the pain had affected her daily life, and her testimony regarding specific limitations in her ability to lift, sit, and walk. But this was probative evidence that the ALJ was required to consider. *See* SSR 96-7p, at 3, 7 (July 2, 1996) ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."); *Hardman v. Barnhart*, 362 F.3d 676, 680 (10th Cir. 2004) (assessing credibility of claimant's complaints of disabling pain and holding that "[i]t was error for the ALJ to fail to expressly consider claimant's persistent attempts to find relief from his pain, his willingness to try various treatments for his pain, and his frequent contact with physicians concerning his pain-related complaints"); *Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996) (holding ALJ erred by failing to consider factors relevant to pain allegations that were supported by the record).

Instead, the ALJ relied on a lack of consistency with treatment and follow up recommendations, allegations of drug-seeking behavior, and a failure to stop smoking. But the ALJ does not cite any specific evidence of record which shows that Ms. Flowers was not consistent with her treatment or failed to follow up with treatment recommendations. And with respect to allegations of drug-seeking behavior, at the

hearing, Ms. Flowers explained why she had sought pain medication from another provider while under the care of the specific doctor who had made the allegations. (TR. 42-43). Upon hearing the explanation, the ALJ had stated that "he didn't see any additional suggestion of anything like that." (TR. 43). Lastly, the statement regarding Ms. Flowers' failure to quit smoking was not related to her allegations of pain and could not serve as basis to discount the allegations.

The ALJ recited Ms. Flowers' testimony and provided a lengthy discourse which included medical opinions that supported Plaintiff's allegations. Ultimately, however, the ALJ concluded that Ms. Flowers was not credible, but he failed to identify which of Plaintiff's allegations he did not believe or say why they were unbelievable. The ALJ failed to provide a proper explanation and link his findings to specific evidence of record. These errors warrant remand.

## VI. THE RFC DETERMINATION

In the decision, the ALJ found that Plaintiff: (1) could not perform her past relevant work, which involved two exertionally "light" jobs, (2) could perform a reduced range of "light" work, and (3) could perform "light" jobs that existed in the national economy. Ms. Flowers challenges the second and third findings, but the Court need not address these allegations, as they will likely be affected following the remand for reconsideration of Dr. Saidi's Physical MSS. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) ("We will not reach the remaining issues raised by claimant because they may be affected by the ALJ's resolution of this case on remand.").

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED** and **REMANDED** for further administrative findings.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of the District Court by **April 5, 2016**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on March 22, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE